937 So.2d 1166 (2006)
Valerie R. Manno SCHURR, Appellant,
v.
Jose R. SANCHEZ-GRONLIER, Candidate for Circuit Court Judge Group 78, and Lester Sola, Supervisor of Elections, Miami-Dade County, Florida, in his official capacity, and the Florida Department of State and Sue M. Cobb, in her official capacity as Florida Secretary of State, Appellees.
No. 3D06-2125.
District Court of Appeal of Florida, Third District.
September 1, 2006.
Buchbinder & Elegant and Harris J. Buchbinder, Miami, for appellant.
Geller, Geller, Fisher & Garfinkel, Hollywood, and Joseph S. Geller and Peggy Fisher; Sale & Kuehne and Benedict P. *1167 Kuehne, Miami; Murray A. Greenberg, Miami, and Oren Rosenthal; Holland & Knight and Richard Antonio Perez, Miami, for appellees.
Before FLETCHER and SHEPHERD, JJ., and SCHWARTZ, Senior Judge.
PER CURIAM.
The judgment below is affirmed on the authority of the comprehensive and eminently correct opinion of the trial court:
THIS MATTER is before the Court on Plaintiff's [Valerie R. Manno Schurr] Motion for Temporary Injunction and Complaint for Declaratory and Injunctive Relief. Plaintiff has requested that this Court declare that under the applicable statutes, Defendant Jose R. Sanchez-Gronlier is not a properly qualified candidate for election to the office of Circuit Court Judge, Eleventh Judicial Circuit, Group 78. After making such a finding, Plaintiff asks that this Court issue an injunction directing that Defendant Lester Sola, the Miami-Dade County Supervisor of Elections, remove Defendant Sanchez-Gronlier's name from the ballot for the Miami-Dade County primary election scheduled for September 5, 2006. Plaintiff additionally asks this Court to issue an injunction directing that Defendant Sue Cobb, in her official capacity as Secretary of State, de-certify Defendant Sanchez-Gronlier as a properly qualified candidate for this primary election.
Plaintiff contends that Defendant failed to timely file the appointment of Campaign Treasurer and Designation of Campaign Depository for Candidates, Form DS-DE 9 (Plaintiff's Exhibit 1) as required by Florida Statutes §§ 105.031(5)(a)(4)[1] and 106.021(1)(a).[2] *1168 Plaintiff also asserts that the check presented for payment of his filing fee as required by § 105.031(5)(a)(1) is not a properly executed check drawn upon his campaign account. She bases this assertion on the belief that Defendant Sanchez-Gronlier opened a campaign account, accepted contributions which were deposited into this account, and made expenditures from the account without having filed the required DS-DE 9, all in violation of § 106.021(1)(a). Plaintiff maintains that the proper remedy for these violations is the removal of Defendant Sanchez-Gronlier from the ballot.
* * *
This Court conducted an evidentiary hearing on August 21, 2006.[3] At that hearing, the parties stipulated to the entry of a final judgment of the matters presented in Plaintiff's motion and complaint. The jurisdiction of the Court over the parties and subject matter of this action is not in dispute. Upon considering the evidence that was presented, the pleadings which were filed and the argument of counsel, the Court finds that:
1. Defendant Sanchez-Gronlier obtained information pertinent to filing for election to judicial office from the Department of State webpage. Included in this information was a memorandum from the Department of State, Division of Elections, regarding qualifying requirements for judicial candidates in the 2006 election (Plaintiff's Exhibit 2). The memo lists what must be filed by candidates who intend to qualify for election by paying a qualifying fee, including 1) an Appointment of Campaign Treasurer and Designation of Campaign Depository (Form DS-DE 9); 2) a Judicial Offices Loyalty Oath (Form DS-DE 26); 3) a Form 6, Full and Public Disclosure of Financial Interests for the year 2005; and 4) the qualifying fee paid by a check drawn on the candidate's campaign account.
2. Defendant Sanchez-Gronlier opened a campaign account with money he loaned to his campaign. There were no contributions made by any other person to his campaign and deposited into his account prior to July 21, 2006.
3. Defendant Sanchez-Gronlier made no expenditures from his campaign account prior to presenting a check drawn on his account to pay his qualifying fee on July 21, 2006.
4. On July 21, 2006, the last day of the qualifying period, Defendant Sanchez-Gronlier presented in person each of the required items for qualifying at the Division of Elections in Tallahassee. The Appointment of Campaign Treasurer and Designation of Campaign Depository for Candidates (Form DS-DE 9) was filed and date stamped at 8:17 a.m. The Form 6, Full and Public Disclosure of Financial Interest for the year 2005 was filed, and dated stamped at 8:17 a.m. A statement that Defendant Sanchez-Gronlier had read and understood *1169 the requirements of the Florida Judicial Code of Conduct was filed and date stamped at 8:17 a.m.[4] Finally, the qualifying check, dated July 19, 2006, was presented, filed and date stamped at 8:19 a.m.
§ 106.021(1)(a) prohibits campaign contributions and expenditures until the candidate has appointed a treasurer and designated a primary campaign depository.[5] § 105.031(5), while not explicitly including such a prohibition, does refer to § 106.021 in referencing the appointment and designation form.
When Defendant Sanchez-Gronlier opened his campaign account, he did so with money he loaned to the campaign. Such loans are campaign contributions.[6] Since he had not designated a primary campaign depository when he opened the account, Defendant Sanchez-Gronlier was in violation of § 106.021(1)(a) for accepting a campaign contribution prior to the filing of the Form DS-DE 9.
The only expenditure made by Defendant Sanchez-Gronlier from the campaign account was the qualifying check. The check was presented for payment two minutes after the appointment of treasurer and designation of campaign depository were filed. As a result, there was no violation of § 106.021 for making an expenditure from the campaign account. The fact that the check was dated July 19, 2006 is of no moment. The expenditure was made at the time of presentment.
Does the fact that Defendant Sanchez-Gronlier opened an account with an improper campaign contribution mean that the check he presented to the Division of Elections was not properly executed? If so, § 105.031(5)(a)(1) provides that he should be disqualified. However, while the campaign contribution which established his campaign account was improper, prior to presenting the check for payment, Defendant Sanchez-Gronlier did file the Form DS-DE 9. Any harm created by his actions under these circumstances was rendered de minimis.[7] This Court finds that Defendant Sanchez-Gronlier cured the defective contribution by his filing of the Form DS-DE 9. Thus, when the check was presented to the Division of Elections, it was drawn on a valid campaign account and was properly executed. *1170 Disqualification of Defendant Sanchez-Gronlier is not warranted on this basis.
Since this Court has found that Defendant Sanchez-Gronlier violated § 106.021, should Plaintiff's prayer that this Court issue an injunction directing the Secretary of State and the Supervisor of Elections for Miami-Dade County to de-certify the offender and remove Defendant Sanchez-Gronlier's name from the ballot be granted? In answering this question, the Court recognizes binding precedent holding that § 106.021 does not provide for a private right of action. Goff v. Ehrlich, 776 So.2d 1011 (Fla. 5th DCA 2001). As properly argued by Defendant Sanchez-Gronlier, §§ 106.18 and 106.19 detail the removal of a candidate for violations of Chapter 106, with enforcement within the purview of the Florida Elections Commission. As a result, the requested injunctive relief is not warranted.
As indicated earlier, the violation of § 106.021 was de minimis and no harm to the public's interest in fair elections resulted.[8] Additionally, the Court's conclusions here comport with the strong public interest of providing electoral choice. Indeed, in Republican State Executive Committee v. Graham, 388 So.2d 556, 558 (Fla.1980), the Supreme Court stated:
If two equally reasonable constructions might be found, this Court in the past has chosen the one which enhances the elective process by providing voters with the greater choice in exercising their democratic rights.
It is hereby DECLARED that Defendant Sanchez-Gronlier is in violation, of § 106.021 but that removal from the ballot is not warranted. It is further ORDERED AND ADJUDGED that Plaintiff's motion and action for injunctive relief is hereby DENIED and the Plaintiff shall go hence without day.
Affirmed.[*]
NOTES
[1] § 105.031(5)(a) requires:

(a) In order for a candidate for judicial office . . . to be qualified, the following items must be received by the filing officer by the end of the qualifying period:
1. [A] properly executed check drawn upon the candidate's campaign account. . . .
2. The candidate's oath . . . .
3. The loyalty oath required by § 876.05, signed by the candidate and duly acknowledged.
4. The completed form for the appointment of campaign treasurer and designation of campaign depository as required by § 106.021. In addition, each candidate for judicial office . . . shall file a statement with the qualifying officer, within 10 days after filing the appointment of campaign treasurer and designation of campaign depository, stating that the candidate has read and understands the requirements of the Florida Code of Judicial Conduct . . . .
5. The full and public disclosure of financial interests . . . or the statement of financial interest . . . whichever is applicable.
[2] 106.021, Fla. Stat. (2005) prescribes the manner in which a person seeking to become a qualified candidate must designate a campaign depository and treasurer prior to qualifying for office. Said section provides limitations on how and when contributions may be accepted or expended in furtherance of such sought candidacy.
§ 106.021(1)(a) provides in pertinent part:
Each candidate for . . . election to office . . . shall appoint a campaign treasurer. Each person who seeks to qualify for . . . election to . . . office shall appoint a campaign treasurer and designate a primary campaign depository prior to qualifying for office. . . . No person shall accept any contribution or make any expenditure with a view to bringing about his . . . election . . . or authorize another to accept such contributions or make such expenditure on the person's behalf unless such person has appointed a campaign treasurer and designated a primary campaign depository.
(1)(b) Except as provided in paragraph (d), each candidate . . . shall also designate one primary campaign depository for the purpose of depositing all contributions received, and disbursing all expenditures made, by the candidate.
(1)(c) Any campaign treasurer or deputy treasurer appointed pursuant to this section shall be a registered voter in this state and shall, before such appointment may become effective, have accepted appointment to such position in writing and filed such acceptance with the officer before whom the candidate is required to qualify. . . .
[3] This was the first day of early balloting and some time after absentee ballots had been distributed by the Department of Elections. Defendant Sanchez-Gronlier argues that Plaintiff should not have waited until such a late point in the election process to file this action when she knew or should have known of any potential violation at a time much closer to the close of the qualifying period on July 21. As a result, Sanchez-Gronlier believes that Plaintiff has "unclean hands" and should not be entitled to equitable relief such as the injunction sought here.
[4] This form, not listed in the Division of Elections memo referenced earlier, is also required by § 105.031(5)(a)(4).
[5] The referenced provision reads at the referenced point "[N]o person shall accept any contribution or make any expenditure with a view to bringing about his or her nomination, election, or retention in public office, or authorize another to accept such contributions or make such expenditure on the person's behalf, unless such person has appointed a campaign treasurer and designated a primary campaign depository."
[6] See The 2006 Candidate and Campaign Treasurer Handbook, which is produced by the Elections Division. Chapter 10, at page 23, states that:

Loans are considered contributions and are not subject to contribution limitations; however, loans made by a candidate to his own campaign are not subject to contribution limitations.
[7] The Court notes that the Department of State, Division of Elections memorandum (Plaintiff's Exhibit 2), contributed to the confusion of the defendant here. Read logically, the memo implies that all of the required documents for qualifying could be tiled at the same time. This is an issue which should be addressed by the Department of State in making it clear that form DS-DE 9 should be filed prior to the opening of a campaign account and prior to the payment of the filing fee as per the Statute. As currently worded, it is reasonable for any person reading the memo to understand it to say that all of the listed documents can be filed together.
[8] It is a common occurrence for potential judicial candidates to hide their interest in seeking election until the latest possible moment, i.e., during the qualifying period, as can be attested by any casual observer in the Division of Elections office on the last day of the period. These stealth candidates, knowing that they must present a check from their campaign account to qualify, will open the account in the same manner as occurred here. This Court recommends that the legislature consider amending both § 105.031 and § 106.021 to more clearly state that loans to a campaign by a potential candidate are contributions within the scope of these sections in an effort to address and prevent violations such as that which occurred here. Appropriate remedies for such violations should also be considered. Additionally, language indicating that the Form DS-DE 9 should be filed prior the opening of the campaign account and prior to the qualifying period should be considered. Even if such an amendment is not made, the Division of Elections should highlight these issues on its memorandum to candidates and on the Form DS-DE 9.
[*] This decision shall take effect and the mandate shall issue immediately without regard to any motion for rehearing.